REVISED December 16, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 97-20316**
_____

**EDWIN O. HEITSCHMIDT,**

**Plaintiff-Appellant,**

**VERSUS**

**THE CITY OF HOUSTON; SAM NUCHIA, Chief;**
**GEORGE SWEETIN; C. P. GILLESPIE; J. K. SHAFFER;**
**KEVIN D. TEMPLETON; GEORGE FENCL; JOHN C. WHITEFIELD,**

**Defendants-Appellees.**

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

November 23, 1998

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Edwin O. Heitschmidt appeals the district court's rule 12(b)(6) dismissal of his § 1983 action against six named Houston Police Officers, former Houston Police Chief Sam Nuchia, and the City of Houston. We reverse and remand for further proceedings consistent with this opinion.

Dismissal pursuant to rule 12(b)(6) is appropriate only when "'it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996) (quoting *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995)); *see also Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1311 (1998). We review the district court's action de novo, accepting as true all well-pleaded facts in Heitschmidt's complaint. *Meadowbriar Home for Children*, 81 F.3d at 529.

In June 1994, Edwin Heitschmidt was living in Houston, Texas with Anne Menke Fucaluro, the leader of a sizable ring of innovative prostitutes known as the "salad sisters." After Fucaluro was arrested as part of a sting operation, a warrant was issued to search the house that Heitschmidt shared with Fucaluro. Officers had information prior to the search that Fucaluro shared the house with Heitschmidt and that he was a U.S. Customs Officer. Heitschmidt was not a target of the investigation, and police had no reason to suspect Heitschmidt of any wrongdoing prior to searching the home.

Officers arrived to serve the warrant around 9:00 p.m. on the evening of June 9, 1994. Two policemen lured Heitschmidt from the residence by claiming they needed his help identifying people who

had allegedly been picked up in the neighborhood. Heitschmidt agreed to help, then put on a shirt and voluntarily exited his home, walking toward a police car parked on the street. As Heitschmidt approached the parked car, police shined a flashlight into the back seat, where Heitschmidt observed two individuals smiling at him. The two policemen escorting Heitschmidt then pushed him onto the trunk of the police car and handcuffed him tightly enough to cause severe pain.

As Heitschmidt was being handcuffed, several unmarked cars pulled into the driveway and in front of the house, and about ten or twelve additional police officers exited the vehicles. Some of the police arriving at this time had guns drawn, and some of the guns were pointed at Heitschmidt.

Heitschmidt was then taken back inside the house and positioned on a bar stool in the living room. Defendant Officer Sweetin told Heitschmidt the house was being searched pursuant to a warrant and held a copy of the warrant in front of Heitschmidt. Heitschmidt explained that he could not read the document without his reading glasses. Officer Sweetin moved the paper back slightly, but Heitschmidt was still unable to read the document and no effort was made to secure Heitschmidt's reading glasses. Officer Sweetin then read Heitschmidt his rights. Heitschmidt asked whether he was under arrest. Sweetin replied that Heitschmidt was not under arrest, and that he was merely being detained.

Heitschmidt remained handcuffed and seated on the bar stool from approximately 9:15 p.m. until about 1:45 a.m. the next morning, as many police officers from various jurisdictions searched the house. During that period, Heitschmidt complained that the handcuffs were painfully tight and requested that they be loosened. Heitschmidt's requests were denied. Heitschmidt also requested permission to use the bathroom. That request was also denied.

Police seized a number of items from the home, all thought to be related to Fucaluro's operation of the prostitution ring. When the four and one-half hour search was complete, the handcuffs were removed and Heitschmidt was released.

Heitschmidt claims that he suffered permanent serious injury to his wrists as a result of the incident, for which he has sought medical treatment. He also claims psychological harm, for which he has sought medical treatment.

## II.

Heitschmidt filed this civil rights suit pursuant to 42 U.S.C. § 1983 in May 1996. Heitschmidt's original complaint named Houston Police Officers George Sweetin, C.P. "Chris" Gillespie, J.K. Shaffer, Kevin D. Thompson, George Fencl, and John C. Whitefield, in their individual capacities; Houston Police Chief Sam Nuchia, in his individual capacity; and the City of Houston, as defendants.

4

Heitschmidt's original complaint raised federal claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments, and several pendant state law claims.

In June 1996, the defendants moved for dismissal on the basis of qualified immunity. In November 1996, the district court entered an order deferring its ruling on the defendants' motion, and permitting Heitschmidt an opportunity to amend his pleadings to set forth facts sufficient to overcome the defendants' claimed entitlement to qualified immunity. *See **Schultea v. Wood***, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) (establishing procedure for requiring a civil rights plaintiff to file a reply tailored to the issues raised by a motion asserting the qualified immunity defense). On December 9, 1996, Heitschmidt filed an amended complaint. Defendants responded with an amended answer, and shortly thereafter, with another motion to dismiss. On April 1, 1997, the district court entered an order (1) dismissing Heitschmidt's Fifth, Eighth, and Fourteenth Amendment claims for failure to state a claim, and (2) dismissing Heitschmidt's Fourth Amendment claims against the six named officers and Chief Nuchia on the basis that those defendants were entitled to qualified immunity. On June 16, 1997, the district court entered a second order (1) dismissing Heitschmidt's claims against the City of Houston for failure to state a claim, and (2) dismissing Heitschmidt's remaining state law claims for want of jurisdiction.

5

On June 26, 1997, the district court entered final judgment dismissing all claims. Heitschmidt appealed.

Heitschmidt's principal brief on appeal challenges only the district court's decision to grant the six named Houston Police Officers qualified immunity from his Fourth Amendment claims. Heitschmidt's briefing does not contain any cogent argument concerning the district court's dismissal of his Fifth, Eighth, and Fourteenth Amendments claims for failure to state a claim, the district court's dismissal of all claims against Chief Nuchia and the City of Houston, or the district court's dismissal of Heitschmidt's pendant state law claims. We therefore limit our review to the district court's April 1, 1997 decision that the six named Houston Police Officers were entitled to qualified immunity from Heitschmidt's Fourth Amendment claims.

## III.

To determine whether the district court's grant of qualified immunity to the individual officers was proper, we must decide whether Heitschmidt's pleadings, if accepted as true, (1) conceivably state violations of clearly established Fourth Amendment rights, and (2) allege conduct that is objectively unreasonable. *See, e.g.*, **Fontenot v. Cormier**, 56 F.3d 669, 673 (5th Cir. 1995). Heitschmidt's Fourth Amendment claims alleged (1) that he was unlawfully and unreasonably detained, and (2) that he

6

was subjected to excessive force. With regard to his unlawful detention claim, Heitschmidt asserts his clearly established right to be free from unreasonable seizure of his person, a right which he maintains includes the clearly established right to be free from an unreasonably prolonged or intrusive detention without probable cause. Heitschmidt further claims that the conduct of the officers was objectively unreasonable because he was held for more than four hours in painful restraints without being allowed access to a bathroom, even though he was not a target of the investigation and police had no articulable reason for suspecting him of misconduct.

Defendants rely upon *Michigan v. Summers*, 101 S. Ct. 2587 (1981), for the proposition that a valid search warrant implicitly authorizes the detention of any occupant of the premises to be searched during the pendency of the search. The district court likewise focused upon *Summers*, holding that police may detain a person not named in the search warrant while a validly executed search warrant is executed. Therefore, the district court reasoned, Heitschmidt could not allege violation of a clearly established right.

Defendants' unqualified reliance upon *Summers* for the proposition that Heitschmidt could not, under any circumstances, state a claim for unlawful detention during the execution of a valid search warrant is unjustified. The holding in *Summers* was far more narrow.

In **Summers**, police obtained a valid warrant to search a house. The defendant, who in that case was trying to suppress evidence offered at his criminal trial, was observed leaving the house as officers arrived.  Officers requested his assistance entering the house and detained him during the search.  **Summers**, 101 S. Ct. at 2589.

**Summers** recognized that:

> some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity.

**Id**. at 2592-93.  The Court noted that those cases recognizing exceptions to the probable cause requirement, for example for **Terry** stops based upon reasonable suspicion, "are consistent with the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." **Id**. at 2593.  The Court concluded that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." **Id**. at 2595.

Whether a particular seizure falls within the limited authority recognized in **Summers** to proceed without probable cause depends upon "both the character of the official intrusion and its

8

justification." *Id*. at 2593; *see also* **United States v. Place**, 103 S. Ct. 2637, 2642-43 (1983) (whether a particular intrusion must be supported by probable cause depends upon a balancing of the "nature and quality of the intrusion . . . against the importance of the governmental interests alleged to justify the intrusion"). **Summers** identified several factors important to its analysis that the intrusion in that case was not great. First, the Court stated that the restraint on liberty was minimal because, unless the respondent intended flight to avoid arrest, he would have little incentive to leave during a search. **Summers**, 101 S. Ct. at 2593. Second, the Court noted that the detention during the search of a residence is unlikely to be prolonged because police are seeking information from the search rather than the person. *Id*. at 2594. Finally, the Court stated that the stigma and inconvenience of the detention is likely to be less significant when the detention occurs in the person's home. *Id*.

**Summers** also identified factors important to its conclusion that the intrusion in that case was justified by important police interests. First, the Court recognized the law enforcement interests in preventing flight and minimizing harm to officers. *Id*. Second, the Court observed that an efficient search may be facilitated by the presence of the resident. *Id*. Finally, the Court stated that the existence of the warrant based upon probable cause "gives the police officer an easily identifiable and certain

9

basis for determining that suspicion of criminal activity justifies a detention of th[e] occupant." *Id.*

Although *Summers* expressly rejects a completely ad hoc approach to determining whether probable cause was required, *id.* at 2595 n.19 ("the balancing of the competing interests . . . must in large part be done on a categorical basis" (internal quotations omitted)), the holding is not without limitation, *see id.* at 2595 n.20 ("we do not decide whether the same result would be justified if the search warrant merely authorized a search for evidence") & *id.* at 2595 n.21 ("Although special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case, we are persuaded that this routine detention of residents of a house while it is being searched for contraband pursuant to a valid warrant is not such a case."). Thus, *Summers* merely holds that the police have limited authority to detain the occupant of a house without probable cause while the premises is searched, when the detention is neither prolonged nor unduly intrusive, and when police are executing a validly executed search warrant for contraband. *Summers* cannot be blindly used for the much broader proposition that Heitschmidt had no Fourth Amendment right to be free from an unreasonably intrusive or unjustified detention while his home was being searched.

The intrusion in this case was far more severe than in *Summers*. In *Summers*, the defendant was merely asked to remain at

10

the home until the search was completed. Heitschmidt claims he was physically pushed onto the trunk of a car and handcuffed in the street. Heitschmidt was then detained in pain without a restroom break for more than four hours. The nature of Heitschmidt's detention renders the Supreme Court's general observations that detention at home may involve minimal restraint and that detention at home generally involves less stigma inapplicable to this case. The duration of Heitschmidt's detention renders the Supreme Court's final observation, that detention at home will rarely be prolonged, likewise inapplicable to this case. Thus, none of those factors that the Supreme Court used to explain why the detention in *Summers* was so minimally intrusive that the probable cause requirement could properly be excused apply in this case.

Similarly, the justification supporting Heitschmidt's detention is far less persuasive than was the case in *Summers*. Heitschmidt was lured from his home. He was not trying to flee. Indeed, he voluntarily dressed and then exited the home, ostensibly to assist police efforts. Thus, the police officers had no significant interest in preventing flight at the time Heitschmidt was pushed onto the trunk of the car and handcuffed. In addition, there was only minimal indication that Heitschmidt's restraint was required to protect the police. Defendants' amended answer states that police were aware Heitschmidt's status as a U.S. Customs Officer might have provided him access to guns. But there is no

11

indication that police had any reason to believe that Heitschmidt was involved in the prostitution ring or any other crime at the time the home was searched, and likewise, no indication that police had any reason to believe Heitschmidt would use any hypothetical gun that he might have been able to access.

As a resident, Heitschmidt could certainly have helped facilitate the search. However, that there was no need to place Heitschmidt in painful restraints to vindicate that legitimate police interest. While the existence of a search warrant may, in some circumstances, support a reasonable belief that anyone present at the premises to be searched is engaged in criminal activity, *id*. at 2594-95, that justification is significantly weakened when, as here, police know the occupant's identity and yet have no articulable reason for suspecting that person of criminal activity.

Finally, defendants' amended answer makes clear that the warrant at issue in this case was aimed at retrieving evidence relating to the prostitution ring for the purpose of preparing a case against Fucaluro, which is exactly what police found. Police were not searching for, and did not find, contraband of any sort. *Summers* expressly left open whether probable cause would be required when the search warrant supporting the detention was for evidence, rather than contraband. *Id*. at 2595 n.21. We conclude that none of those factors that the Supreme Court used to explain why the detention in *Summers* was justified by legitimate police

12

interests should be given any significant weight in this case. Based upon an application of the controlling factors identified in *Summers*, it appears that Heitschmidt has at least conceivably alleged violation of his clearly established right to be free from unreasonable seizure of his person.

The remaining inquiry is whether the police officers' actions were nonetheless objectively reasonable. Heitschmidt was restrained for more than four hours. *See* **Place**, 103 S. Ct. at 2642-43 ("we have never approved a seizure of the person [without probable cause] for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case"). But we need not base our holding upon the prolonged nature of Heitschmidt's detention alone. Once the premises was secure and police were proceeding with their work without interference, there was no justification for prolonging the physically intrusive aspect of Heitschmidt's detention. Heitschmidt's pleadings allege that there were between ten and twelve police officers in the home during the search. Heitschmidt could have been effectively restrained, and the police interest in facilitating the search could have been vindicated, with a far less intrusive detention. We cannot say, on the basis of the pleadings, that the officers' conduct was objectively reasonable as a matter of law.

Heitschmidt has at least conceivably alleged a violation of his clearly established Fourth Amendment right to be free from

13

unreasonable seizure. Moreover, the defendants' conduct in continuing the painful restraint once any conceivable interest in the physically intrusive nature of the detention was vindicated requires the conclusion that the officers' conduct was not objectively reasonable as a matter of law. We conclude the officers are not entitled, on the basis of the pleadings, to qualified immunity with respect to Heitschmidt's unreasonable detention claim. Accordingly, the district court's dismissal of that claim is reversed.

**IV.**

Heitschmidt also claims that the defendants subjected him to excessive force, in violation of the Fourth Amendment. To state a claim for imposition of excessive force, Heitschmidt was required to show that he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable. *See **Ikerd v. Blair***, 101 F.3d 430, 433-34 (5th Cir. 1996). When examining the propriety of qualified immunity from excessive force claims, the Court is faced with the unusual circumstance that the standard for stating a claim, the objective reasonableness of the force exerted, coincides in large part with the inquiry for determining qualified immunity, the objective reasonableness of the officers' conduct. On the basis of these pleadings, we are unable to conclude that

either the force exerted or the officers' conduct was reasonable as a matter of law.

Heitschmidt complained that he was cuffed too tightly, and then left in pain for a significant period of time without justification. The district court held that the officers' failure to loosen the handcuffs or to allow Heitschmidt to go to the bathroom was objectively reasonable. In reaching that conclusion, the district court recognized that nonfeasance or failure to act is less likely to be considered an act of excessive force than a direct act of injury. In our view, the district court failed to give appropriate weight to the consequence that it was the officers who placed Heitschmidt in the painful restraints to begin with. Heitschmidt informed the officers that he was in pain and asked that the cuffs be loosened. Once police secured the premises there was no justification for requiring Heitschmidt to remain painfully restrained. Heitschmidt alleges that he suffered serious and permanent injury to his wrists, for which he has required medical treatment. While the character of the force exerted may make Heitschmidt's claim more difficult to prove, we cannot say that it is sufficient to render Heitschmidt's excessive force claim without effect. We conclude that Heitschmidt has at least conceivably stated a violation of his Fourth Amendment right to be free from excessive force. Accordingly, the district court's dismissal of Heitschmidt's excessive force claim on the basis of qualified immunity is reversed.

15

Heitschmidt argues on appeal that he should have been allowed limited discovery before the district court granted defendant's motion for qualified immunity. The district court dismissed Heitschmidt's claims on the basis that his pleadings did not state facts sufficient to overcome the qualified immunity defense. Qualified immunity is a defense from both liability and suit. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996). Our Court has held that "[e]ven limited discovery on the issue of qualified immunity must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'" *Id*. at 1368-69 (quoting *Wicks v. Mississippi State Employment Serv.*, 41 F.3d 991, 994 & n.10 (5th Cir. 1995)).

Heitschmidt's motion for limited discovery was denied before the district court's decision on the defendants' motion to dismiss. There was, therefore, no error in that decision. Now that Heitschmidt's pleadings have been judged adequate to at least potentially state a claim, however, discovery can proceed on remand. We do not hold that Heitschmidt will eventually be able to establish a violation of his Fourth Amendment rights, but rather, that his pleadings are sufficient to create that possibility. *See Meadowbriar Home for Children*, 81 F.3d at 529. Should further discovery lead to the conclusion that there is no genuine issue of

fact which could support such a claim, there will be no procedural or substantive barrier to the filing of a motion for summary judgment on the issue of qualified immunity. *See* **Behrens v. Pelletier**, 116 S. Ct. 834 (1996).

## CONCLUSION

The district court's decision dismissing Heitschmidt's Fourth Amendment claims for unreasonable detention and the use of excessive force against defendants George Sweetin, C. P. "Chris" Gillespie, J. K. Shaffer, Kevin D. Thompson, George Fencl, and John C. Whitefield is REVERSED and the cause REMANDED for further proceedings consistent with this opinion.