Brenda BATISTE

v.

CITY OF BEAUMONT, City of Beaumont Police Department, Tom Scoefield, Paul Perrit, Ray E. Beck, and Darlene Wisby

No. 1:05–CV–109.

United States District Court,
E.D. Texas,
Beaumont Division.

March 10, 2006.

Langston Scott Adams, Terrence Leon Holmes, Beaumont, TX, for Plaintiff.

Joseph P. Sanders, Kyle Guthrie Thomas, Frank D. Calvert, Beaumont, TX, for Defendants.

## *MEMORANDUM ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS*

CLARK, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States magistrate judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court, particularly Bmt. Gen. Order 04–07.

The magistrate judge submitted a "Report and Recommendation Re Qualified Immunity" which recommends that the court (a) reconsider its earlier order denying the individual defendants' motion to dismiss, (b) sustain the qualified immunity defenses asserted by defendants Tom Scoefield and Ray E. Beck, and (c) grant their motion to dismiss based on immunity.

No objections have been filed. Further, upon independent review, the court concurs with the magistrate judge's analysis. Accordingly, the court concludes that the findings of fact and conclusions of law of the magistrate judge are correct, and the report of the magistrate judge (Docket No. 34) is **ADOPTED**.

By separate orders, the court will implement the recommendations of the magistrate judge. For clarity, the court hereby notifies the parties that the claims now remaining for adjudication are:

A. Section 1983 allegations of excessive force against defendants Perrit and Wisby, implicating the Fourth Amendment's protection from unreasonable seizure and the Fourteenth Amendment's guarantee of Due Process; and

B. Texas Tort Claims Act and Section 1983 allegations of municipal liability against the City of Beaumont based upon alleged implementation or execution of a policy or custom that was the moving force behind the asserted Fourth and Fourteenth Amendment violations.

## *REPORT AND RECOMMENDATION RE QUALIFIED IMMUNITY*

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States magistrate judge. The re-

ferral order directs the magistrate judge to submit a report containing proposed findings of fact, conclusions of law, and a recommended disposition of pretrial matters that are potentially case-dispositive. Bmt. Gen. Order 04–07 at ¶ 2. This report addresses qualified immunity defenses asserted by certain defendants.

## I. INTRODUCTION

Plaintiff's principal allegation is that municipal police officers subjected her to unlawful physical force during the course of an arrest and subsequent detention. The court previously entered a partial final judgment that disposed of certain parties and claims.[1] The remaining causes of action and defendants are:

A. Section 1983 allegations of excessive force against officers Perrit, Beck and Wisby, implicating the Fourth Amendment's protection from unreasonable seizure and the Fourteenth Amendment's guarantee of Due Process;

B. Section 1983 allegations of supervisory liability against former chief of police, Scofield[2] based upon (i) direct personal involvement and (ii) failure to train or supervise; and

C. Texas Tort Claims Act and Section 1983 allegations of municipal liability against the City of Beaumont based upon an alleged policy or custom that was a moving force behind the asserted Fourth and Fourteenth Amendment violations.

Regarding the first two remaining claims above, defendants Chief Tom Scofield, Lt. Ray E. Beck, Paul Perrit and Darlene Wisby, assert immunity from suit and liability under the qualified immunity doctrine. Early on, they moved for dismissal on that basis. The court denied their motions, but granted their alternative motion for a "Rule 7 reply."[3]

Plaintiff filed her Rule 7 reply. The individual defendants then filed a new motion asking the court to reconsider its earlier decision denying their motion to dismiss based on qualified immunity. Defendants argue that (1) plaintiff fails to allege specific facts sufficient to overcome their qualified immunity defense, and (2) plaintiff fails to allege specific facts that (a) show defendant Beck violated a clearly-established right and (b) show defendant Chief Scofield had direct or imputed knowledge of alleged widespread and abusive conduct of his officers or that an objectively reasonable person in his position would have understood that his action or inaction caused such a violation of plaintiff's constitutional rights.

---

1. *See* Partial Final J. & Order (Docket No. 24).

2. Plaintiff's complaint identifies this defendant as "Tom Scoefield." The court takes administrative notice that the correct spelling of this defendant's surname is "Scofield", and further that Chief Scofield is now retired. Diane Downing, *Beaumont Bids Goodbye to Top Cop: Chief Scofield to Retire after 36 Years*, Beaumont J., Dec. 14–20, 2005, at 1, 3.

3. Rule 7(a), Federal Rules of Civil Procedure, authorizes the court to "order a reply to an answer." The United States Court of Appeals for the Fifth Circuit deems such replies appropriate when a Section 1983 complaint against defendants entitled to qualified immunity asserts a cognizable claim, but contains such sparse factual allegations as to render the court unable to determine the immunity defense. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1185 at 23); *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995); *Henrise v. Horvath*, 94 F.Supp.2d 765, 766 (N.D.Tex.2000). Rule 7 replies must allege particular facts, including such facts as prevent defendants from qualified immunity.

This report deals with qualified immunity, generally, and more specifically with the defendants' motion to reconsider.

## II. FACTUAL ALLEGATIONS

Plaintiff's Rule 7 reply contains more specific factual allegations than did her original state court petition.[4] These allegations substantially clarify and amplify the original allegations, and, therefore, are sufficient for the court to address meaningfully the immunity defenses.

Plaintiff alleges that defendants Perrit and Wisby, officers of the Beaumont Police Department, arrested her pursuant to a "mental health commitment warrant"[5] in the 3600 block of College Street, Beaumont, Texas, on June 22, 2004. Plaintiff alleges that she remained in the officers' custody thereafter for approximately three and a half hours, while the officers sought to secure her admission to a hospital. Plaintiff alleges that she did not resist arrest, and throughout the remaining time, she was fully compliant with all of the officers' verbal instructions. Despite her acquiescence, plaintiff alleges the arresting officers "struck, kicked, dragged and tasered [her] purposely and repeatedly." *See* Rule 7 Reply at 1 (Docket No. 25).

Plaintiff alleges that upon her initial arrest, officer Wisby (female) tightly placed handcuffs on her, and then refused her request to loosen them. Wisby then "tasered"[6] plaintiff and put her into a patrol car. Officers Perrit (male) and Wisby then left plaintiff in the patrol car while gathering information from plaintiff's sister, Linda La Blue. Afterward, Wisby entered the patrol car with plaintiff to transport her to a mental health facility. Wisby again refused plaintiff's request to loosen her handcuffs.

Plaintiff was first transported to Spindletop MHMR (Spindletop), at 2750 South 8th Street, Beaumont, Texas. Perrit followed Wisby's patrol car in his own patrol vehicle, arriving at about the same time. Both Perrit and Wisby again denied plaintiff's request to loosen her handcuffs. Plaintiff alleges that Wisby then pulled her from the patrol car, and threw her to the ground. Perrit and Wisby dragged her into the Spindletop facility where a receptionist stated that plaintiff could not be admitted at that time. Perrit and Wisby then dragged plaintiff back to Wisby's patrol car while plaintiff remained handcuffed.

Next, plaintiff was transported to Memorial Hermann Behavioral Center (MHBC) at 3250 Fannin, Beaumont, Texas. Once inside that facility, and while awaiting admission, a taser gun was held against plaintiff's neck. Wisby then grabbed plaintiff's throat. Lt. Beck arrived shortly thereafter, and remained, while interacting with MHBC's staff, for forty-five minutes. Plaintiff alleges that

---

4. This action was originally filed in the 172nd Judicial District Court of Jefferson County, Texas. On February 9, 2005, it was removed to federal court on the basis of federal question jurisdiction.

5. *See* Texas Health & Safety Code Ann. §§ 574.001–574.014 (2005) (explaining the application process to seek a warrant for commitment under the Texas Mental Health Code).

6. The court uses "tasered" to mean a shock from a taser gun. Courts define "taser guns"

as "conducted energy weapons" that use propelled wire to channel energy to a remote target, thereby controlling and overriding the body's central nervous system. *Draper v. Reynolds*, 369 F.3d 1270, 1273 n. 3 (11th Cir.2004). A taser gun can fire two probes up to 21 feet, which are connected to the handheld taser gun via high-voltage, insulated wire. *Id.* When the probes touch the target, the taser gun transmits electrical pulses along the wires and into the body of the target. *Id.*

Beck also refused to loosen her handcuffs which were then cutting into her skin and causing her pain.

Plaintiff was eventually denied admission at MHBC, and was taken back into Wisby's patrol car. She was next transported to Memorial Hermann Baptist Hospital (Baptist Hospital) at 3080 College Street, Beaumont, Texas. There, plaintiff was injected with what she believes was a sedative, following which Baptist Hospital staff requested that the officers loosen her handcuffs. Plaintiff alleges that Beck, Perrit and Wisby again refused. Plaintiff alleges she remained at Baptist Hospital for two hours, but was not admitted.

Plaintiff alleges that she was then transported back to the original facility—Spindletop—by Perrit and Wisby. Plaintiff alleges she was pulled into a room upon her arrival at Spindletop. Plaintiff again pleaded with both officers to loosen her handcuffs. When the admission process was completed, plaintiff alleges Perrit and Wisby told her to stand and face the wall. After facing the wall, plaintiff alleges she was tasered in the back and buttock "numerous times" by Perrit and Wisby, causing her to fall onto the floor. Perrit allegedly restrained plaintiff while Wisby sat on top of her, while continuing to taser plaintiff repeatedly.

Plaintiff alleges that Henry Johnson, a Spindletop staff member, entered the room and told Perrit and Wisby to stop. Perrit and Wisby subsequently released plaintiff and removed her handcuffs. Plaintiff alleges that her ordeal on June 22, 2004, caused her skin to be cut, unspecified physical impairments, severe physical pain and mental trauma.

Regarding Chief Scofield, plaintiff's Rule 7 reply proffers only a comment attributed to Chief Scofield in an unspecified interview with a newspaper, *The Examiner*. There, he discusses his departmental policy regarding use of force. The reporter quoted Chief Scofield as stating:

> *We have a use of force continuum that consists of verbal commands, physical strength, pepper spray, baton use, tasers and then deadly force. Ninety percent of the time we get compliance through verbal commands, but when we are dealing with very difficult people, we escalate to the level that we need to control the situation.*

*See* Rule 7 Reply at 3.

### III. QUALIFIED IMMUNITY DOCTRINE

The doctrine of qualified immunity protects public officials from liability and suit—even though their conduct violates federally-protected rights—if their actions were objectively reasonable in reference to clearly-established law. *See Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Davis v. Scherer*, 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The qualified immunity doctrine was established to reconcile two competing interests:

> One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ When public officials assert qualified immunity, it is the court's duty to evaluate the merits of this affirmative defense and plaintiff's burden to negate such a defense. *See Felton v. Polles*, 315 F.3d 470, 477 (5th Cir.2002); *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 995 n. 10 (5th Cir.1995). Qualified

immunity analysis is a two-step process: (1) the court must determine whether plaintiff alleges a violation of a clearly-established right, and (2) if so, the court must decide whether the officials' alleged conduct was objectively reasonable in light of clearly-established law at the time of the incident. *See Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Felton,* 315 F.3d at 477. As for the latter issue, "[t]he touchstone of this inquiry is whether a reasonable person would have believed his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi,* 202 F.3d 730, 736 (5th Cir.2000). If either inquiry results in a negative answer, the defendant is entitled to qualified immunity. *See Siegert,* 500 U.S. at 231, 111 S.Ct. 1789.

## IV. Federally Protected Rights

### A. Excessive Force

The court previously determined that plaintiff's arrest and handcuffing implicates the Fourth Amendment's proscription against unreasonable seizures, while plaintiff's subsequent detention triggers the Fourteenth Amendment's interdiction against deprivation of liberty without due process of law. *See Report & Recommendation of the United States Magistrate Judge* 1:05cv109, at 20 (Docket No. 19). Although the alleged facts make it difficult to state exactly when Fourth Amendment seizure ended and Fourteenth Amendment detention began, it is undisputed that both constitutional provisions protect citizens from excessive force by public officials. The Fourth Amendment prohibits objectively unreasonable force, that is, force used that is unreasonable in light of the facts and circumstances confronting an official. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourteenth Amendment forbids unnecessary and wanton infliction of pain, i.e., force used sadistically or maliciously for the purpose of causing pain, rather than to maintain or restore discipline. *See Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.1993) (citing *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

### B. Failure To Protect

 In addition, the Constitution imposes a duty on officials to protect detained persons from unlawful harm. An official cannot stand idly by, but rather must intervene or take other reasonable action to protect a detained person from known danger. An official who exhibits deliberate indifference to the safety of a person in custody is liable for failure to protect. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference occurs when the official is aware of facts from which an inference can be drawn that a serious risk of harm exists, actually draws the inference, and then disregards the risk. *Id.* at 837, 114 S.Ct. 1970. An act or omission unaccompanied by knowledge of a significant risk of harm (that an official should have perceived but did not) is not deliberate indifference. *Id.*

### C. Supervisory Liability

Supervisors are not automatically and vicariously liable for their subordinates's bad acts. However, supervisors can be liable in excessive force cases when there is a causal connection between their acts and omissions and the subordinates' acts that cause injury. Such liability arises if the supervisor actually orders use of excessive force, fails to intervene or protect, or—in certain circumstances—fails to train

or supervise. Liability for failing to train or supervise usually arises in situations involving a history of widespread abuse, and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, *and* failure to supervise or train amounts to deliberate indifference. *See Report & Recommendation of United States Magistrate Judge* 1:05cv109, at 4–6 (Docket No. 21).

## V. APPLICATION AND ANALYSIS

### A. Officers Wisby and Perrit

■ Fifth Circuit jurisprudence on qualified immunity is highly deferential to public officials.[7] But even under this circuit's forgiving rules, plaintiff's Rule 7 reply alleges facts that, if true, preclude defendants Wisby and Perrit from escaping liability based on immunity. Whether analyzed under the Fourth Amendment or the Fourteenth Amendment, their alleged actions violated clearly established rights of which an objectively reasonable police officer would have been aware. Simply put, no objectively reasonable officer would have thought that striking, kicking, dragging, choking and repeatedly using a taser gun against a non-resisting, fully compliant citizen would constitute either "reasonable force in light of the facts and circumstances" or "a good faith effort to maintain or restore discipline." Defendants Wisby and Perrit simply cannot reasonably argue that they or any objectively reasonable police officer would not have understood that such conduct would violate a citizen's rights in the circumstances alleged.

The officers initially acted within their lawful discretion when handcuffing plaintiff upon her arrest. Moreover, handcuffing too tightly, without more, does not amount to actionable excessive force. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). However, plaintiff alleges that she complained of her handcuffs over a period of three hours; that the handcuffs had cut her skin by the time she reached the second of four hospitals; and that staff at the third hospital requested officers to loosen the handcuffs. These circumstances, if true, could demonstrate violation of a well-established constitutional right of which an objectively reasonable officer would have known. *See Heitschmidt v. City of Houston*, 161 F.3d 834, 839–40 (5th Cir.1998) (declaring that a court should give "appropriate weight" to the fact that the officers who refused to loosen her handcuffs were the ones who placed the detainee in that position to begin with).

### B. Lieutenant Beck

■ Plaintiff's Rule 7 reply clarifies that Lt. Beck did not personally use or order force to be used against plaintiff. There is no allegation that he was present when force was used. Plaintiff alleges only that Lt. Beck was present, interacting with hospital staff, when she requested on two occasions that her handcuffs be loosened, and that he refused.

The facts alleged against Lt. Beck in plaintiff's Rule 7 reply smack more of a failure-to-protect claim than an excessive force claim. Viewed as such, plaintiff fails to allege facts that prevent Lt. Beck from maintaining his qualified immunity de-

---

**7.** In *Snyder v. Trepagnier,* the court concluded enigmatically that objectively unreasonable force for Fourth Amendment purposes was nevertheless objectively reasonable conduct for qualified immunity purposes. *See* 142 F.3d 791, 800–01 (5th Cir.1998); *see also id.* at 802 (DeMoss, J., dissenting in part) (stating that "no officer could reasonably believe that the use of unreasonable force did not violate clearly established law").

fense. Plaintiff fails to allege that Beck was aware of facts from which an inference could be drawn that plaintiff's handcuffs posed a serious risk of harm; or that Beck drew the inference; or that Beck then disregarded the risk. Consequently, the court must answer the first prong of the qualified immunity analysis (has plaintiff alleged violation of a clearly established federal right?) in the negative. As such, Lt. Beck is entitled to immunity in this action.

## C. Chief Tom Scofield

█ Plaintiff's Rule 7 reply contains no factual allegation that Chief Scofield personally participated in the incident in question, or that he personally directed or ordered officers Wisby and Perrit to use force. The Rule 7 reply also asserts no facts showing that Chief Scofield was aware of Wisby's and Perrit's alleged conduct, or that his acts or omissions were a moving force behind the officers' behavior, or that he was aware generally of a widespread pattern of similar conduct on the part of these or other officers in the department. Rather, the sole factual allegation regarding Chief Scofield in plaintiff's Rule 7 reply is that he established a "use of force continuum" for dealing with difficult people. That continuum permits officers to escalate their use of force, starting with verbal commands and increasing to deadly force, as necessary to control the situation.

First, there is nothing unconstitutional about that policy. Second, there are no factual allegations sufficient to establish Chief Scofield's personal involvement in the incident in question. Third no factual allegations support imposition of supervisory liability based on failure to train or supervise. As such, plaintiff fails to aver facts that would establish violation of a clearly established federal right by Chief Scofield. Consequently, Chief Scofield is entitled to immunity in this action.

## VI. Recommendations

For reasons stated above, the "Defendants Tom Scofield, Paul Perrit, Darlene Wisby, and Ray Beck's Motion to Reconsider Defendants' Motion to Dismiss" (Docket No. 28) should be partially granted and partially denied as follows:

1. **DENIED** as to defendants Darlene Wisby and Paul Perrit, without prejudice to reassertion of their qualified immunity defense by subsequent motion for summary judgment.

2. **GRANTED** as to defendants Tom Scofield and Ray E. Beck, who should be dismissed as parties defendant in this action.

## VII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

█ A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).