# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2026

Lyle W. Cayce
Clerk

No. 24-20484

Michael Lewis; Regina Armstead,

*Plaintiffs—Appellees*,

*versus*

John Delgado; Adam Vasquez; Arthur Love; John Clausen; Matthew Newport,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-2593

Before King, Jones, and Wilson, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

While searching for a group of armed suspects, police apprehended and handcuffed plaintiff-appellee Michael Lewis for six minutes. During those six minutes, a dialysis-related stent in Lewis's forearm was damaged. The district court refused to grant qualified immunity to the officers at the summary-judgment stage. Because the officers did not violate any clearly established law by handcuffing Lewis, we REVERSE.

No. 24-20484

## BACKGROUND

In November 2020, the Rosenberg, Texas Police Department received a report that a group of armed suspects had pointed a firearm at several bystanders. The report included a description of the suspects' vehicle: a white Dodge Charger with black rims and tinted windows. Less than ten minutes later, Officer Adam Vasquez, one of the defendant-appellants, observed a car matching the vehicle's description near the location of the reported incident. Officer Vasquez pulled the car over and radioed for backup. The other defendant-appellants—Officers John Clausen, Matthew Newport, Arthur Love, and John Delgado—responded to Officer Vasquez's request for backup and arrived within several minutes.

Because the report had indicated the presence of multiple armed suspects, the five defendant-appellants ("the Officers") elected to proceed with a "high-risk vehicle stop." As part of the department's standard procedure for such stops, Officer Vasquez directed the occupants of the Dodge Charger to throw the car keys out the vehicle's window. The Officers then directed the occupants of the vehicle to step out of the car one at a time, slowly approach the Officers, and be handcuffed for the duration of the stop. Officers Vasquez and Clausen recorded the stop on their body cameras.[1]

Unbeknownst to the Officers, plaintiffs Regina Armstead and Michael Lewis, an elderly couple, were the car's only occupants. Lewis had a stent implanted in his left forearm to accomplish dialysis. According to Lewis, placing anything, including a pair of handcuffs, on Lewis's left arm risked damaging the stent.

---

[1] Officers Love and Delgado also recorded the stop on their body cameras, but neither of them retained the footage.

2

No. 24-20484

Police first ordered Armstead, who was driving, to exit the vehicle and approach them. She complied with their instructions. As she did, she informed Officer Newport that her husband was a dialysis patient. Police then ordered Lewis to leave the car and approach them, which he did. Officer Love handcuffed Lewis. Here, Lewis's account diverges from that of the Officers. Lewis states that he told the Officers he could not have anything placed on his left arm both when he left his car and again immediately after he was handcuffed.[2] The police contend that they only learned of Lewis's condition after he was handcuffed.

Based on video footage of the incident, Lewis appeared to be in some discomfort after being handcuffed; he grunted and winced on his way to the police car. After Officer Love secured Lewis in the back of a squad car, the Officers demanded that any remaining passengers exit the Dodge Charger. When no one else emerged, the Officers approached the car, verified the absence of weapons or other passengers, and secured the scene. Within four minutes, the police removed Lewis's handcuffs. Including the time it took police to secure the scene, Lewis remained in handcuffs for about six minutes.

After the incident, Lewis experienced pain in his wrist. At his next dialysis appointment, he discovered that his stent had been damaged. To repair the stent, Lewis underwent surgery.

In August 2022, Lewis and Armstead filed suit on various claims, including an excessive force claim, against the City of Rosenberg, the Rosenberg Police Department, and the defendant Officers. Only a few of

---

[2] Lewis provided conflicting testimony about this timeline. He initially did not contend that he disclosed his condition until after the police had handcuffed him and placed him in a squad car. Only later did he state that he mentioned his condition twice as described above.

these claims, including Lewis's claim for excessive force, survived the defendants' motion to dismiss. At the summary-judgment stage, all defendants asserted qualified immunity. Adopting the recommendation of a magistrate judge, the district court granted qualified immunity on all claims except Lewis's excessive force claim against the five defendant Officers. The district court denied qualified immunity for the excessive force claim, finding a genuine dispute of material fact existed about when Lewis informed the Officers about his condition. The Officers appealed.

## STANDARD OF REVIEW

This court reviews a district court's denial of qualified immunity at the summary judgment stage *de novo*. *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022) (quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] district court's determination that a particular dispute is *material* is a reviewable legal determination." *Bailey v. Ramos*, 125 F.4th 667, 675 (5th Cir. 2025) (emphasis in original) (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). The materiality of a dispute depends on whether the disputed fact "might affect the outcome of the suit." *Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

## DISCUSSION

Lewis and the Officers dispute whether the Officers had advance notice of Lewis's condition, either from Lewis and Armstead's statements to the officers or Lewis's expressions of discomfort. Lewis contends that these disputes are material and thus cannot be resolved on summary judgment. But for these disputes to affect the outcome of the case, the applicability of

qualified immunity would have to turn on whether the Officers received advance notice of Lewis's medical condition. It does not. With or without notice, the Officers' conduct does not amount to a violation of clearly established law.[3] The district court should have granted qualified immunity to the Officers.

Qualified immunity protects federal and state officials from certain types of liability unless a plaintiff "show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011). The burden of establishing these factors rests solely on the plaintiff. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). A court may assess the two qualified-immunity prongs in either order, and it need not address both prongs if one is dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

The analysis here begins and ends with whether the Officers violated a "clearly established" right. "A right is clearly established only if relevant precedent 'ha[s] placed the . . . constitutional question beyond debate.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (alterations in original) (quoting *al-Kidd*, 563 U.S. at 741, 131 S. Ct. at 2083). The Supreme Court has specified that relevant precedent can include "controlling authority or a

---

[3] While the subsequent analysis proceeds under the assumption that the Officers were aware of Lewis's health condition before handcuffing him, there are reasons to be skeptical of that assumption. Lewis offered conflicting testimony about his statements to the Officers, and the only warning discernible in the body-camera footage is Armstead's statement that Lewis was a dialysis patient. Standing alone, that statement does not make clear that handcuffing Lewis could result in injury.

robust consensus of cases of persuasive authority."[4] *D.C. v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 589–90 (2018) (internal quotation marks removed) (quoting *al-Kidd*, 563 U.S. at 741–42, 131 S. Ct. at 2084). When evaluating precedent, courts must not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742, 131 S. Ct. at 2084). Because of that stringent requirement, an officer's violation of a right does not defeat qualified immunity "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Rogers v. Hall*, 46 F.4th 308, 312 (5th Cir. 2022) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79, 134 S. Ct. 2012, 2023 (2014)).

To show that the Officers violated a clearly established right, Lewis cites several precedents from this court. The facts in these cases bear little resemblance to the case at issue here. *See Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009); *Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998).[5] In *Deville*, during a routine traffic stop, police broke the plaintiff's car window, pulled her from her vehicle, threw her against the side of her car, and then applied tight handcuffs. 567 F.3d at 162. The plaintiff suffered significant injuries to her wrists, abdomen, jaw, and head, prompting the court to deny qualified immunity. *Id.* at 168. A few years before, in

---

[4] The Supreme Court has never explicitly held that lower court opinions may create clearly established law, nor has it determined a numerical threshold of cases necessary to qualify as a "robust consensus." *See Wesby*, 583 U.S. at 66 n.8, 138 S. Ct. at 591.

[5] Lewis cites several other cases from courts in this circuit. *See Ordonez v. Gonzalez*, No. EP-23-CV-99-KC, 2024 WL 5038700, at *6 (W.D. Tex. Dec. 9, 2024); *LeCompte v. Hendricks*, No. CV 22-1355, 2023 WL 4687963, at *6–*7 (E.D. La. June 23, 2023). These two unpublished district court opinions fall far short of establishing a consensus of persuasive authority in this circuit.

*Heitschmidt*, the plaintiff suffered "serious and permanent injury to his wrists" after police left him in handcuffs for four and a half hours, ignoring his repeated complaints that the handcuffs were too tight. 161 F.3d at 836. Based on those facts, the court denied qualified immunity. *Id.* at 840.

Neither *Deville* nor *Heitschmidt* looks anything like this case. The force applied in each case was significantly greater in either degree or duration than the force used by the Officers here. On top of that, neither case involved a high-risk stop or a search for armed suspects, during which officers face a pressing need to secure the scene quickly. In contrast, the Officers restrained Lewis for six minutes while searching for a group of armed suspects.[6] Taken together, the exigency created by the high-risk stop, the short duration of the handcuffing, and the minimal force applied mean that the Officers' conduct did not run afoul of *Deville* or *Heitschmidt*.

Unable to point to a case with facts closely analogous to those at issue here, Lewis turns to the more general principle in this court's case law that police can use only minimal force on compliant suspects. Once again, though, the cases Lewis cites involve a far greater degree of force than the defendant Officers applied here. *See Newman v. Guedry*, 703 F.3d 757, 760 (5th Cir. 2012) (finding qualified immunity inappropriate where officers struck a mostly compliant suspect with a baton thirteen times and tased him three times during a traffic stop); *Cooper v. Brown*, 844 F.3d 517, 521 (5th Cir. 2016) (denying qualified immunity where an officer did not prevent a K9 unit from biting a DUI suspect for several minutes); *Bush v. Strain*, 513 F.3d 492, 496 (5th Cir. 2008) (rejecting a qualified immunity defense where an officer

_____

[6] In his brief, Lewis argues that, even under the circumstances, the Officers could have used alternatives to handcuffs, such as "double" cuffs or body belts. Based on the record, these alternatives do not appear to have been available to the Officers on the night of the incident.

allegedly shoved the plaintiff's head against a car window hard enough to break two of her teeth after she was already handcuffed); *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (refusing to grant qualified immunity where police repeatedly tased someone who did not match the suspect's description). This array of inapposite precedent falls far short of demonstrating that every reasonable officer would have concluded the defendant Officers acted unconstitutionally in this case. Moreover, none of these cases involves a question whether officers were aware of preexisting health problems that rendered a plaintiff more susceptible to injury.

Lewis's search for clearly established law among the opinions produced by other circuits fares no better. *See Kopec v. Tate*, 361 F.3d 772, 774, 777 (3d Cir. 2004) (ten minutes of handcuffing a suspect who was not a safety risk, complained of pain, and requested at least four times that the cuffs be removed);[7] *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016) (suspect complained repeatedly about pain from handcuffs); *Herzog v. Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002) (DUI suspect was handcuffed for over an hour); *C.B. v. City of Sonora*, 769 F.3d 1005, 1030–31 (9th Cir. 2014) (sixth grader was handcuffed for over thirty minutes); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1205 (10th Cir. 2008) (suspect was handcuffed for over an hour and a half and complained of pain multiple times). Aside from being handcuffed for under six minutes, Lewis did not complain about the handcuffs or tell the Officers he was in pain. Indeed, Lewis did not exhibit any discomfort other than briefly grunting and wincing as an officer helped him to his feet after handcuffing him. Even if the Officers observed these signs of discomfort, and even if the discomfort resulted from the handcuffs

---

[7] The court in *Kopec* acknowledged that it might have reached a different result had the officer "been engaged in apprehending other persons or other imperative matters." 361 F.3d at 777. Here, the Officers were engaged in such conduct.

rather than Lewis's difficulty getting to his feet, this body language is a far weaker indicator of pain than plaintiffs' repeated complaints in Lewis's cited opinions. Taken together, these out-of-circuit cases do not create a consensus that unambiguously condemns the Officers' conduct. Nor do these cases involve whether an officer had advance notice of a plaintiff's particular susceptibility to injury.

Finally, that Lewis remained in handcuffs for four minutes after the Officers had secured the scene does not render qualified immunity inapplicable. Four minutes in handcuffs does not compare to the duration of handcuffing in cases denying qualified immunity based on the time a plaintiff spent in handcuffs. *See Martin v. Heidman*, 106 F.3d 1308, 1310 (6th Cir. 1997) (thirty-five minutes); *Rabin v. Flynn*, 725 F.3d 628, 631 (7th Cir. 2013) (twenty-five minutes); *Bastien v. Goddard*, 279 F.3d 10, 12 (1st Cir. 2002) (over four hours); *Mglej v. Gardner*, 974 F.3d 1151, 1158–59 (10th Cir. 2020) (twenty minutes and then handcuffed again for the duration of a ninety-five mile drive); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995) (thirty-five minutes).

Despite casting a wide net, Lewis turns up no cases sufficiently close to the facts here to describe a clearly established right that these Officers violated. Even if the Officers had notice of Lewis's health condition, they lacked notice that handcuffing Lewis would violate the law. None of our cases prohibit briefly handcuffing a suspect during a high-risk stop while officers strive to secure the scene, even if it takes the officers a few minutes to remove the cuffs once the scene is secure. Lewis has thus failed to refute the Officers' qualified immunity defense. Because the absence of clearly established law is dispositive, we do not separately assess whether the Officers' actions constituted excessive force under the Fourth Amendment.

No. 24-20484

## CONCLUSION

Qualified immunity is appropriate here, and that finding does not require us to resolve disputes of material fact. Accordingly, we REVERSE the district court's denial of qualified immunity.