United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 04-31115
_____

JO JO HOLDEN,

Plaintiff - Appellee

versus

DAVID KNIGHT; ET AL,

Defendants

GARY ANGELO; ROBERT P. ROTH,

Defendants - Appellants

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
2:03-CV-2347-C
_____

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Defendants-appellants Robert P. Roth (Roth) and Gary Angelo
(Angelo) challenge the district court's order denying their
motion to dismiss claims filed against them by plaintiff-
appellee Jo Jo Holden (Holden).  For the reasons provided below,
the court affirms the district court's order.

_____

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

## Background

Holden, who is black, was employed with the Louisiana Department of Transportation and Development (LADOTD) for twenty-three years where he worked under the supervision of Roth and Angelo, who are both white.  On October 16, 2001, David Knight (Knight), a white LADOTD employee, and Holden had an altercation at work, which Holden maintains Knight initiated.  Holden alleges that, during an investigation of the incident, Roth and Angelo learned that prior to the incident, Knight stated that he would be leaving the LADOTD soon and taking someone with him.  Roth and Angelo, purportedly acting in accordance with a zero tolerance policy regarding workplace altercations, offered Holden the choice of resigning or being fired.  Holden submitted a letter of resignation but indicated that he disagreed with his supervisors' methods and that the incident and subsequent termination were racially motivated.  Holden later sued Roth, Angelo, Knight, and LADOTD, alleging race discrimination under 42 U.S.C. § 1981, denial of procedural due process under 42 U.S.C. § 1983, race discrimination under LA. REV. STAT. ANN. § 23:332, and state law claims of vicarious liability and battery.  Holden maintains that Roth and Angelo should have refused to accept the letter of resignation and instead should have proceeded with a predeprivation proceeding that would have given him the opportunity to make his case prior to being terminated.

2

Roth and Angelo moved to dismiss the claims against them under FED. R. CIV. P. 12 (b)(6) on the grounds that Holden (1) failed to state a claim under either § 1981 or § 1983, or in the alternative, that they were entitled to qualified immunity; (2) failed to state a claim under LA. REV. STAT. ANN. § 23:332; (3) failed to state a claim of constructive discharge; and (4) made a frivolous claim for injunctive relief that should be dismissed. The district court denied the motion, determining that the claims under §§ 1981 and 1983 were sufficient and that Roth and Angelo were not entitled to dismissal on qualified immunity grounds, that Holden had stated a claim under LA. REV. STAT. ANN. 23:332, that the constructive discharge claim was moot because it was never raised, and that the request for injunctive relief is not frivolous because the discrimination claims remain. Roth and Angelo filed a timely notice of appeal to challenge the denial of their motion on qualified immunity grounds.

## Jurisdiction

Ordinarily, this court does not have jurisdiction over interlocutory orders such as ones denying Rule 12(b)(6) motions.[1] Denials of motions to dismiss on qualified immunity grounds, however, are appealable under the collateral order doctrine because the qualified immunity defense is not only an immunity

---

[1]*Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996).

3

from liability, but also an immunity from litigation.[2] Here, Roth and Angelo challenge only the district court's consideration of Holden's procedural due process claim under § 1983.[3] Thus, the court will consider the applicability of qualified immunity to that claim.[4]

## Standard of Review

The court reviews the district court's decision *de novo*, using the same standards applied by the district court.[5] The court liberally construes the complaint in favor of the plaintiff assuming all pleaded facts as true.[6] "In appraising the sufficiency of the complaint [the court follows], of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

[2]*See Mitchell v. Forsyth*, 472 U.S. 511, 524-30 (1985) (stating that a decision is appealable if the rights asserted in the action are too important to be deferred until the entire case is resolved).

[3]Roth and Angelo do not advance an argument about the applicability of qualified immunity to Holden's race discrimination claim under § 1981; therefore, they have waived any such argument. *See L & A Contracting v. S. Concrete Services*, 17 F.3d 106, 113 (5th Cir.1994) (stating that a party waives an issue by failing to adequately brief it on appeal).

[4]*Morin*, 77 F.3d at 119.

[5]*Id*. at 120.

[6]*Capital Parks, Inc. v. Southeastern Adver. & Sales Sys*., 30 F.3d 627, 629 (5th Cir. 1994).

would entitle him to relief."[7]

**Whether Roth and Angelo Are Entitled to Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[8]  To defeat qualified immunity, a plaintiff must meet a bifurcated test.  The plaintiff must first allege a violation of a clearly established constitutional right.[9]  "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[10] In addition to alleging a violation of a clearly established constitutional right, the plaintiff must also allege facts that show the defendant's conduct was not objectively reasonable in the light of the law established at the time of the incident.[11]  Thus, this court must first determine whether

---

[7]*Conley v. Gibson*, 355 US 41, 45-6 (1957).

[8]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[9]*Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998).

[10]*Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[11]*Heitschmidt*, 161 F.3d at 836-37.

5

Holden's complaint alleges the violation of a clearly established right.[12]

Holden maintains that his termination without written explanation or a predeprivation hearing denied him his right to procedural due process. "Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story."[13] "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond."[14] "The fundamental requirement . . . is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[15] Public officials violate substantive due process rights if they act arbitrarily or capriciously."[16]

In his complaint, Holden contends that LADOTD policy requires employers to give employees a written notice of proposed disciplinary action along with facts supporting this recommendation and to grant employees an opportunity to be heard

---

[12]*See Wilkerson*, 329 F.3d at 434-35.

[13]*Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995).

[14]*Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003).

[15]*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[16]*Finch*, 333 F.3d at 562-63.

prior to the disciplinary action.  Holden alleges that he was forced to choose between resigning or being terminated, and that he was not given a predeprivation hearing.  Thus, Holden has alleged facts that indicate that he was not given the procedural due process he was entitled to under LADOTD policy.

A government employee alleging a due process claim in connection with an employment action or termination must also assert a property interest in continued employment.[17]  The hallmark of a property interest "is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"[18]  Such an interest does not exist merely because a plaintiff is a government employee, but may be established through operation of federal or state law, contractual obligations, or policy.[19]  Holden must "point to some state or local law, contract or understanding that creates a property interest in his continued employment."[20]

In addition to the allegations about requiring written notice of disciplinary action and a right to be heard, Holden

---

[17]*See Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997) (stating that the Fourteenth Amendment's due process clause did not create a property interest in continued government employment).

[18]*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978)).

[19]*Cabrol*, 106 F.3d at 105.

[20]*Id.*

7

alleges that LADOTD established a Compliance Section in response to an employment discrimination lawsuit brought by the federal government. Holden alleges that the Compliance Section investigates employee grievances and tracks LADOTD's performance in the area of equal opportunity for blacks. Holden also alleges that Roth and Angelo are career supervisory employees who have been trained in the proper management of LADOTD employees and who know how to carry out management functions in a racially neutral manner. If these allegations are true, Roth and Angelo's termination authority was constrained by LADOTD policy and Holden could not be terminated without receiving notice and an opportunity to be heard. Thus, Holden has alleged a present interest in continued employment.

Roth and Angelo, however, maintain that there can be no due process claim where the termination was voluntary. They rely on this court's decision in *Bury v. McIntosh,*[21] but ignore the subsequent cases in which this court has amplified and clarified the conditions under which a resignation may be involuntary. This court has made clear that a plaintiff may make out a cognizable claim when he alleges particular facts showing that he found himself "between the Scylla of voluntary resignation and

---

[21]*Bury v. McIntosh*, 540 F.2d 835 (5th Cir. 1976).

8

the Charybdis of forced termination."[22]  For example, in *Findeisen v. North East Ind. Sch. Dist.*, this court reversed a summary judgment rendered on behalf of the school district where a tenured teacher alleged that his resignation had been procured under threat that he would otherwise be fired and as a means for the school district to avoid the hearing procedure required for civil service employees.[23]  Similarly, in *Bueno v. City of Donna*, we held that employees who were forced to resign in order to avoid involuntary discharge in retaliation for their political affiliation stated a cause of action.[24]  Like the plaintiffs in *Findeisen* and *Bueno*, Holden has alleged that Roth and Angelo forced him to choose between "Scylla of voluntary resignation and the Charybdis of forced termination."

Moreover, even if *Bury v. McIntosh* remained the controlling precedent, Roth and Angelo fail to demonstrate that *Bury* applies to the facts alleged by Holden.  In that case, the court determined that Bury, a government employee, was not deprived due process when given the choice of voluntarily resigning or submitting to civil service termination proceedings.[25]  The court

---

[22]*Fowler v. Carrollton Public Library*, 799 F.2d 976, 981 (5th Cir. 1986), *rehearing denied*, 803 F.2d 717 (5th Cir. 1986).

[23]749 F.2d 234, 237-40 (5th Cir. 1984)), *cert. denied*, 471 U.S. 1125 (1985).

[24]714 F.2d 484, 492-93 (5th Cir. 1983).

[25]*Bury*, 540 F.2d at 836.

explained that Bury turned down the opportunity to submit to a predeprivation hearing, and that even if he had been told that he would be fired as a result of the hearings, he did not have reason to believe that the employer recommending termination could influence the civil service board.[26]  But unlike Bury, Holden has alleged that Roth and Angelo informed him that he would be fired if he did not resign and he was not given the opportunity for a predeprivation hearing.  Holden contends that he did not resign voluntarily, but rather, made a decision when faced with an ultimatum.  Under these circumstances, Holden would not forfeit his right to due process.  Based on the factual allegations in the complaint, Holden has alleged the deprivation of a clearly established right.

The court must next determine whether Holden alleged facts showing that Roth and Angelo's conduct was not objectively reasonable in light of the circumstances.  Qualified immunity is defeated if an official "'*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or

---

[26]*Id.*

10

other injury. . . .' "[27]

In his complaint, Holden alleges that Roth and Angelo wanted to get rid of him under circumstances in which he would have no recourse about termination and that their actions were racially motivated. Holden further alleges that Roth and Angelo learned that Knight stated that he would be leaving the company, that he would be taking someone with him, and that he used a racial slur in making these statements. Holden further asserts that Roth and Angelo learned that Holden acted in self-defense in response to a deliberate, unprovoked attack by Knight. Finally, Holden contends that Roth and Angelo did not follow LADOTD policy requiring written notice of proposed disciplinary action and an opportunity to be heard prior to disciplinary action. If Holden's allegations are true, Roth and Angelo should have known that presenting Holden with an ultimatum would violate his right to procedural due process. If they disregarded Holden's right to a predeprivation hearing, they would have acted arbitrarily and capriciously. Under these circumstances, Roth and Angelo would not have acted reasonably.

The district court reached the same conclusion, specifically stating, "[c]onstruing the record in a light most favorable to the Plaintiff, the Court finds that the record at least gives rise to a genuine issue of material fact regarding whether the

---

[27]*Harlow*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

11

Defendants's acted reasonably in denying Plaintiff his right to a predeprivation proceeding."  Roth and Angelo contend that this language shows that the district court erroneously applied the summary judgment standard rather than the legal principles applicable to a motion to dismiss.  Although the district court may have stated its conclusion in terms of a summary judgment standard—a genuine issue of material fact—the court's order shows that the court applied the correct standards.  The court accepted Holden's allegations as true and determined that Holden had alleged a set of facts that might entitle him to relief.  In addition, Holden's complaint shows that the facts that Roth and Angelo rely on to support their qualified immunity defense are disputed.  In their answers, Roth and Angelo denied that they knew about Knight's purported statements; that they learned that Holden was the victim of a deliberate, unprovoked attack; and that they failed to follow LADOTD policy.  When disputed issues of material fact exist, which, if true, show that the defendants' conduct was not objectively reasonable, the defense of qualified immunity cannot apply.[28]

For the reasons stated above we dismiss this appeal.

APPEAL DISMISSED.

---

[28]*Morin*, 77 F.3d at 119.