DREW, J.
JjM.M., represented by the Mental Health Advocacy Service, appealed the judgment finding him mentally ill and gravely disabled by substance abuse and ordering him judicially committed for inpatient treatment at The Pines[1] for substance abuse treatment. M.M. was also judicially committed to the State of Louisiana Department of Health and Hospitals (“DHH”) until released to The Pines. The evidence presented to support the judicial commitment did not constitute the statutorily required “clear and convincing evidence” that M.M. was a danger to himself or others or gravely disabled either by mental illness or substance abuse.
While the involuntary judicial commitment sought by Louisiana State University Health Sciences Center (“LSUHSC”) and the action taken by the trial court was undoubtedly in M.M.’s best interests, the trial court erred in finding the equivocal evidence sufficient to meet the high burden of proof. Therefore, the judgment is legally erroneous. La. Const, art. 5 § 10. When the evidence falls short of the prescribed burden of proof, we must reverse. If M.M. is still involuntarily confined due to the judgment of judicial commitment, we order and direct that M.M. be released.
FACTUAL AND PROCEDURAL BACKGROUND
On June 13, 2007, LSUHSC filed a petition seeking judicial commitment of M.M., who was hospitalized at LSUHSC on a Physician’s Emergency Certificate on May 23, 2007. LSUHSC alleged M.M. was suffering from mental illness and substance abuse which made him dangerous to himself and others, gravely disabled, and unable to provide for |2his own basic needs. Moreover, M.M. allegedly was unable or unwilling to seek voluntary admission for treatment. The treating physician petitioned for M.M.’s judicial commitment to The Pines.
LSUHSC asserted that the 23-year-old man had a history of reported bipolar disorder with a long history of abuse of alcohol and prescription drugs. His mother sought protective custody for him. According to the petition, the Request for Protective Custody asserted M.M. was talking nonstop and making no sense, making his mother afraid, and expressing suicidal thoughts.
Other allegations were that M.M. had a DUI arrest when 18 and had two recent DUI arrests. He admitted heavy alcohol use, two months of sobriety followed by a relapse with heavy drinking for two or three weeks. While acknowledging alcoholism and his need for help, M.M. also “displayed significant denial and minimize[d] his symptoms.” M.M.’s goal was to return to Alabama and get custody of his infant daughter. His treating physician opined that his alcohol and drug abuse *837 along with his DUIs warranted M.M.’s commitment to an inpatient substance abuse rehabilitation facility.
Following a hearing at which the court heard from M.M., his mother, and his LSUHSC doctor, the trial court found that M.M. was gravely disabled from mental illness and substance abuse and ordered, among other things, that M.M. be committed to inpatient treatment at The Pines and held at LSUHSC until he was released to The Pines. That judgment was signed Ron June 29, 2007. His court-appointed attorney from the Mental Health Advocacy Service filed for this appeal.
DISCUSSION
Judicial commitment of a mentally ill person is a civil exercise of the state’s police power. It is not a criminal proceeding or a formal interdiction affecting the committed person’s property rights. Before a person may be subjected to a judgment of civil commitment, the petitioner must establish by clear and convincing proof that the person is a danger to himself or others or is gravely disabled by substance abuse or mental illness. “Clear and convincing” evidence is more than a “preponderance” of evidence but less than “proof beyond a reasonable doubt.” In the Matter of B.W., 566 So.2d 1094 (La.App. 2d Cir.1990). Under this “clear and convincing” standard, the existence of the disputed fact must be highly probable, or much more probable than not. In the Matter of L.M.S., 476 So.2d 934 (La.App. 2d Cir.1985).
La. R.S. 28:55(E)(1) directs:
If the court finds by clear and convincing evidence that the respondent is dangerous to self or others or is gravely disabled, as a result of substance abuse or mental illness, it shall render a judgment for his commitment. After considering all relevant circumstances, including any preference of the respondent or his family, the court shall determine whether the respondent should be committed to a treatment facility which is medically suitable and least restrictive of the respondent’s liberty. However, if the placement determined by the court is unavailable, the court shall commit the respondent to the Department of Health and Hospitals for placement in a state treatment facility until such time as an opening is available for transfer to the treatment center determined by the court, unless the respondent waives the requirement for such transfer. Within fifteen days following an alternative placement, the department shall submit l4a report to the court stating the reasons for such placement and seeking court approval of the placement.
La. R.S. 28:56(B) states:
B. A commitment for alcoholism shall expire after forty-five days and the patient, if not converted to a voluntary status, shall be discharged, unless the court, upon application by the director of the treatment facility, finds that continued involuntary treatment is necessary and orders the patient recommitted for a period not to exceed sixty days; however, not more than two such sixty-day recommitments may be ordered in connection with the same continuous confinement.
The definition of “gravely disabled” is in La. R.S. 28:2(10):
“Gravely disabled” means the condition of a person who is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness or substance abuse and is unable to survive safely in freedom or protect himself from serious harm; the term also includes incapacitation by alcohol, *838 which means the condition of a person who, as a result of the use of alcohol, is unconscious or whose judgment is otherwise so impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment.
In O’Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), the Supreme Court stated:
[A] State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.
Generally, the appellate courts must give great weight to factual findings by the trial court. Because a person is deprived of liberty by involuntary commitment, the evidence must be reviewed for strict adherence to the high standard of proof required by constitutional and statutory law. In the Matter of M.M., 552 So.2d 528 (La.App. 2d Cir.1989).
| nMental Illness
There was no clear evidence that M.M. was mentally ill, much less that he was gravely disabled as a result of mental illness. The trial court’s reasons stated that M.M. possibly had bipolar disorder. His LSUHSC doctor testified that whether M.M. was mentally ill was yet to be determined. A neuropsychological exam showed primarily a problem of substance abuse and did not support a diagnosis of primary mental illness. Since the practice was to let a patient “detoxify” by letting all drugs metabolize out of his system, the doctor explained that no medicine was prescribed for M.M. while he was hospitalized. M.M. did not exhibit any withdrawal while at LSUHSC.
M.M. was “reasonably sane” at the time of the hearing according to his LSUHSC doctor, who attributed that to M.M.’s being in a very supportive environment in the hospital away from stress, alcohol, and access to drugs. The doctor ventured that M.M. might be mentally ill based upon information received that another professional had made that diagnosis and prescribed medication in a dosage appropriate for treatment of bipolar disorder. The doctor acknowledged he had never talked to that professional who prescribed the medicine and did not know what type of medical professional he/she was.

Substance Abuse

At the hearing, M.M. admitted that he had a problem with alcohol and used legal and illegal substances including marijuana, phenobarbital (his dog’s), and his mother’s Xanax. While he tested positive for four different | ^substances on admission to the hospital, the LSUHSC doctor testified M.M. did not suffer “withdrawal” and required no treatment for physical problems.
M.M. testified he returned to Shreveport after his girlfriend, who was the mother of his child, refused to permit him to live with her in Alabama due to what M.M. attributed to custody issues and money problems. His mother testified that M.M. lost his job as a cook while living in Alabama but that resulted from miscommunication and was not all his fault.
During the six months he resided in his parents’ home, he acknowledged verbal altercations with his mother over his unemployment, his child, and his medication. He confirmed being drunk and appearing naked in his parents’ kitchen on one occasion and being arrested twice for DUI within a three-week period. One of the arrests resulted in pretrial diversion while the other charge was pending. He explained driving the wrong way on a one-way street by saying he turned into the street the wrong way and immediately *839 parked. M.M.’s only employment during the previous six months was intermittent work clearing bamboo from his aunt’s property. M.M. stated he had a culinary arts degree from Bossier Parish Community College and had worked in the restaurant business. M.M. testified he did not want to have treatment but wanted to work to support his child.
M.M.’s mother testified that she and M.M.’s father took him in but were dissatisfied with his behavior, since he was not working, brought people into the house at night, watched internet porn, got drunk and once|7went into the kitchen naked, left for days at the time without letting them know his whereabouts, and was not clean enough. M.M. also did not sleep, exhibited slurred speech, walked into walls, and was argumentative. M.M. frightened her but not to the point that she called the police, until he was admitted to LSUHSC. His mother acknowledged that she and her husband were not strong enough to demand that M.M. leave their home.
Other evidence that M.M. had a substance abuse problem was the neuropsy-chological exam which showed a problem of substance abuse and a finding of substance abuse made by the admissions assessment for The Pines substance abuse treatment center.

Grave Disability

While the testimony coupled with M.M.’s admission documents that M.M. has a substance abuse problem with drugs and alcohol, this record does not contain clear and convincing evidence that M.M. was gravely disabled by his substance abuse. The LSUHSC doctor stated at the hearing that M.M. should be confined to LSUHSC because the doctor wanted to maintain M.M.’s mental stability, to keep him away from temptation, to protect M.M., and to protect others if M.M. became intoxicated and drove under the influence. Since M.M. had received no treatment, the doctor predicted that upon release, M.M. would again use alcohol or drugs. The doctor speculated that M.M. would again drive under the influence and be a danger to himself and others. The doctor requested that M.M. be retained in custody of the hospital so that the level of sobriety and state of mental | ^stability M.M. displayed at the hearing could be maintained until M.M. received treatment at The Pines.
LSUHSC also sought to rely on M.M.’s stated preference to work instead of being treated for substance abuse as evidence of his incapability of realizing his disability and making rational decisions regarding treatment. La. R.S. 28:2(10). That a person with a substance abuse problem unwisely declines to seek treatment is not clear and convincing evidence that M.M. was unable to make rational decisions.
To prove a person is gravely disabled, evidence must clearly and convincing establish that he is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter and unable to survive in freedom or protect himself from serious harm. Both elements must be proved to establish grave disability. In re Erin B., 99-496 (La.App. 5th Cir.2/16/00), 751 So.2d 946, writ denied, 2000-1000 (La.6/2/00), 763 So.2d 597. Even during the time periods in which M.M. actively abused drugs and alcohol resulting in wild and foolish behavior, no evidence established that M.M. could not provide for or protect himself. During the period of time he resided with his parents, he did not have to provide for himself, since they provided his basic needs.
CONCLUSION
The record shows that M.M. has a substance abuse problem which may or may *840 not be complicated by an undiagnosed mental illness. LSUHSC’s evidence did not establish by clear and convincing evidence that M.M. was a danger to himself or others- or gravely disabled either by mental 13illness or substance abuse. Therefore, the trial court erred in ordering that M.M. be confined pursuant to an involuntary judicial commitment. The evidence presented was insufficient to support a judgment of involuntary judicial commitment.
Our review reveals the evidence presented did not strictly adhere to the high standard of proof required for involuntary commitment. However, this court is compelled to observe that the actions taken by LSUHSC, his parents, and the trial court were all in his best interests of M.M. who has a serious substance abuse problem. M.M. needed/needs immediate treatment for his admitted substance abuse and evaluation for possible mental illness which this court urges M.M. to seek voluntarily if he has not already done so. Otherwise, M.M. may find himself in circumstances of his own making which result in his becoming a danger to himself or others or being gravely disabled either by mental illness or substance abuse.
DECREE
The judgment of judicial commitment ordering M.M. confined to LSUHSC and The Pines is REVERSED. If M.M. is still involuntarily confined, it is ordered and directed that he be discharged upon finality of the judgment of this court.

. The Pines is a facility in Shreveport for treatment of addictive and substance abuse disorders.