**Stacy LeBEOUF, Plaintiff–Appellant**

v.

**Bain MANNING, in his individual and official capacity as the Human Resource Director of the LSU Health Science Center—Leonard J. Chabert Medical Center, Defendant–Appellee.**

No. 13–31154.

United States Court of Appeals, Fifth Circuit.

July 15, 2014.

Joseph Arthur Smith, III, Esq., Smith Law Firm, Baton Rouge, LA, Richard Talbot Seymour, Law Offices of Richard T. Seymour, P.L.L.C., Washington, DC, for Plaintiff–Appellant.

Lance Sterling Guest, Assistant Attorney General, Louisiana Department of Justice, New Orleans, LA, for Defendant–Appellee.

Before KING, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM: *

Stacy LeBeouf appeals the district court's grant of Bain Manning's motion to dismiss for failure to state a claim. LeBeouf alleges that she was deprived of her property interest in her employment when she was constructively discharged without procedural due process of law. Concluding that she has set forth a plausible claim for relief, we REVERSE and REMAND.

## I.

LeBeouf alleged the following facts in her original and two amended complaints. LeBeouf worked as a nurse at the Leonard J. Chabert Medical Center (the "Hospital") for 25 years. Manning, the Human Resources Director at the Hospital, informed LeBeouf that she would be suspended for thirty days with pay and would be immediately escorted by security guards to a drug screening and a three-day, inpatient psychiatric hospitalization. Manning did not provide LeBeouf any explanation concerning the need for the suspension or immediate involuntary psychiatric commitment for evaluation. LeBeouf avers that she was not a threat to herself or others, nor does she consume any alcohol or illicit drugs. She was suffering at the time from undiagnosed Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder.

After LeBeouf informed Manning that she would submit to the drug screening, but not to an inpatient psychiatric commitment, Manning told her that she had three options: (1) she could accept the suspension, submit to the drug screening, and participate in the psychiatric hospitalization; (2) she could resign; or (3) she would be terminated. Manning did not provide LeBeouf time to consider her options and

refused her request to speak with someone else.

LeBeouf immediately resigned and later sued Manning in his individual and official capacities under 42 U.S.C. § 1983, claiming that she was constructively discharged from the Hospital without due process of the law. LeBeouf alleges that Manning was experienced in the procedures and practices of the Louisiana Civil Service Commission, yet he failed to provide her notice or an opportunity to be heard and did not present any evidence that she had consumed any alcoholic beverages, had taken illegal drugs, was otherwise chemically impaired, or was a threat to herself or others.

Manning moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted Manning's motion, but allowed LeBeouf to amend her complaint. In her second amended complaint, LeBeouf alleged that Manning was motivated, at least in part, by his desire to avoid a termination hearing as required by the rules of the Louisiana Civil Service Commission. Manning again moved to dismiss, arguing that LeBeouf did not allege a constitutional violation cognizable under § 1983 and, in the alternative, that he is entitled to qualified immunity. The district court again concluded that LeBeouf failed to state a claim for relief and entered final judgment in favor of Manning. LeBeouf appeals.

## II.

We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir.2013). We generally disfavor such motions and grant them "only if the complaint

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

fails to plead 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir.2011) ("[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." (citation and internal quotation marks omitted)). In deciding a Rule 12(b)(6) motion, we cannot look outside the pleadings and must accept all well-pleaded facts as true, considering them, and the inferences to be drawn therefrom, in the light most favorable to the plaintiff. *Leal,* 731 F.3d at 413 (observing that under *Bell Atlantic* a well-pleaded complaint must proceed even when actual proof of the facts is improbable and recovery is unlikely).

## A.

To state a § 1983 claim based on termination of employment without affording procedural due process, LeBeouf must allege that (1) she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was terminated without receiving the due process protections to which she was entitled. *See McDonald v. City of Corinth, Tex.,* 102 F.3d 152, 155–56 (5th Cir.1996).

The parties agree that LeBeouf is a classified civil service employee with permanent status who has a property interest in her position at the Hospital and therefore is entitled to due process protection. *See Lange v. Orleans Levee Dist.,* 56 So.3d 925, 930 (La.2010) (observing that a permanent, classified civil service employee has a property interest in her job and cannot be terminated without due process of law); *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (explain-ing that procedural due process requires notice and an opportunity to respond before one can be deprived of a protected property interest). They disagree, however, as to whether the complaint demonstrates that she resigned or was constructively discharged. *See Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir.1990) (observing that an employer who causes a constructive discharge is liable for failing to provide the due process protections that the employee would have received if he was formally discharged).

Establishing constructive discharge generally requires a plaintiff to show that her employer made her "working conditions so intolerable that a reasonable employee would feel compelled to resign." *See Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 562 (5th Cir.2003). In other words, a plaintiff may be constructively discharged when she is placed "between the Scylla of voluntary resignation and the Charybdis of forced termination." *Fowler v. Carrollton Pub. Library,* 799 F.2d 976, 981 (5th Cir.1986) (relying on *Findeisen v. N.E. Indep. Sch. Dist.,* 749 F.2d 234 (5th Cir.1984) and *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir.1983)). While the determination of whether a reasonable employee would feel compelled to resign depends on the facts of each case, we have observed that it can be shown where an employee is subjected to badgering, harassment, or humiliation calculated to encourage the employee to resign. *See Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994). Further, "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures." [1] *Fowler,* 799 F.2d at 981; *see*

---

1. *Fowler* suggests that a constructive discharge claim requires showing both that the employee had to choose between resignation and termination *and* that the employer was

also *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir.2005).

Here, an objectively reasonable employee in LeBeouf's position could feel that Manning created an intolerable working environment when he informed her that she would be immediately involuntarily committed to a three-day psychiatric hospitalization.[2] He told LeBeouf that she could not collect her property or vehicle and would be immediately escorted to the drug test and commitment for psychiatric evaluation by security guards. However, psychiatric commitment under Louisiana law generally requires "clear and convincing evidence that [an individual] is dangerous to self or others or is gravely disabled, as a result of substance abuse or mental illness." La. Rev. Stat. Ann. § 28:55(E)(1) (2011); *see also In re M.M.*, 969 So.2d 835, 837 (La.Ct.App.2d Cir.2007). Despite the fact that commitment to a hospital for psychiatric care is a "massive curtailment of liberty," Manning provided no explana-

tion to LeBeouf as to why she would be committed or why such commitment was necessary in light of the fact that she was not protesting the drug test or the suspension. *See Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). In other words, any concern for patient care and concern for determining whether Manning arrived at work under the influence of a drug would be addressed by the suspension and the testing; Manning did not identify any need for the additional condition of a three-day commitment in a psychiatric ward. Indeed, Manning did not suggest that she was "gravely disabled" or a threat to herself or others. Therefore, the situation that LeBeouf alleges Manning created constitutes the type of harassment that results in an intolerable working environment such that a reasonable employee would be forced to choose between the Scylla of voluntary resignation and the Charybdis of forced termi-

motivated by a desire to avoid pre-termination proceedings. 799 F.2d at 981. However, our subsequent decision in *Brown v. Texas A & M University* states that to establish such a claim "a plaintiff must allege particular facts showing *either* that the employee found herself 'between the Scylla of voluntary resignation and the Charybdis of forced termination,' *or* that 'the employer's conduct . . . [was] motivated by a desire to avoid subjecting its actions to the scrutiny of a termination-related hearing.'" 804 F.2d 327, 333 (5th Cir.1986) (alteration in original) (emphasis added) (quoting *Fowler*, 799 F.2d at 981); *see also Holden v. Knight*, 155 Fed.Appx. 735, 739 (5th Cir.2005) (unpublished) (explaining that we "ha[ve] made clear that a plaintiff may make out a cognizable claim when he alleges particular facts showing that he found himself between the Scylla of voluntary resignation and the Charybdis of forced termination" without discussing the need to show a motive to avoid pre-termination procedures (citation and internal quotation marks omitted)); *but see Rutland v. Pepper*, 404 F.3d 921, 922–23 (5th Cir.2005) (holding that plaintiff failed to establish a constructive discharge

claim because she did not assert that her employer was motivated by a desire to avoid pre-termination procedures without considering whether plaintiff could alternatively allege only that she was forced to choose between resignation and termination). While our rule of orderliness requires us to follow the earliest-decided decision, we need not address any potential conflict among these cases because, as we discuss below, LeBeouf alleges facts sufficient to plausibly establish that she was forced to choose between resignation and termination and that Manning was motived by a desire to avoid pre-termination procedures. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n. 8 (5th Cir.2006).

**2.** LeBeouf focuses on Manning's demand that she immediately submit to a three-day commitment for psychiatric evaluation and does not take issue with the 30–day suspension or the drug test. As a result, our analysis only addresses whether requiring her to submit immediately to a three-day psychiatric commitment created an intolerable working environment that effectively forced her to choose between resignation or termination.

nation. *See Barrow,* 10 F.3d at 297; *Fowler,* 799 F.2d at 981.

Moreover, based on the facts presented in her second amended complaint, it is plausible to infer that Manning's actions were motived by his desire to secure LeBeouf's resignation and avoid affording her pre-termination proceedings. Manning's position as a Human Resources Director at the Hospital would have made him aware of the Louisiana Civil Service Commission's requirement that LeBeouf receive a pre-termination hearing if she did not voluntarily resign. *See Lange,* 56 So.3d at 930 (observing that a pre-termination hearing is obligatory under Louisiana's Civil Service Rules for civil service employees who have a property interest in their jobs). Further, Manning refused LeBeouf's request for more time to consider her options or to speak with someone else concerning her decision to be terminated, resign, or submit to the psychiatric commitment. These facts lead to the plausible inference that Manning was motivated by a desire to force LeBeouf's resignation in order to avoid the pre-termination procedures. *See Fowler,* 799 F.2d at 981; *Rutland,* 404 F.3d at 923.

While the district court was "sympathetic" to LeBeouf's argument that requiring her to participate in a three-day inpatient psychiatric commitment and evaluation created an intolerable work environment, the court concluded that "the facts do not plausibly suggest that Manning had an improper motive to force LeBeouf's resignation or avoid termination procedures. They indicate, rather, that Manning intended to investigate whether LeBeouf was on drugs and thereafter determine whether to pursue her termination." However, such a conclusion improperly draws an inference in favor of Manning. While a finder of fact may ultimately determine that Manning did not intend to avoid pre-termination procedures, it is inappropriate to attribute a benign intent to Manning given that we are deciding a Rule 12(b)(6) motion, particularly in light of the lack of explanation for the need for psychiatric commitment in addition to the suspension and drug testing.

Viewing the facts and drawing all inferences in the light most favorable to LeBeouf, we are compelled to conclude that LeBeouf's complaint plausibly establishes that she was constructively discharged. *See Finch,* 333 F.3d at 562; *Fowler,* 799 F.2d at 981. Based on this alleged constructive discharge, LeBeouf sets forth a plausible procedural due process claim as she did not receive either notice or an opportunity to respond to any alleged misconduct prior to her discharge. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

## B.

Manning further argues that LeBeouf's claim must be dismissed because she failed to allege that she exhausted her administrative remedies, which he maintains are necessary to overcome his assertion of qualified immunity. A plaintiff must exhaust her administrative remedies in order to recover for a denial of procedural due process based on a constructive discharge. *See Rathjen v. Litchfield,* 878 F.2d 836, 839–40 (5th Cir.1989). However, the plaintiff need not plead exhaustion of administrative remedies when asserting her § 1983 claim. *See Jones v. Bock,* 549 U.S. 199, 212–16, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (observing that "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense," and therefore, the plaintiff is not required to plead or demonstrate exhaustion in her complaint). Indeed, we can only dismiss for failure to state a claim based on a failure to exhaust when the face of the complaint makes clear that the plaintiff did

not exhaust.[3] *See Carbe v. Lappin,* 492 F.3d 325, 328 (5th Cir.2007).

While Manning identifies several post-termination remedies available to LeBeouf and maintains that she did not avail herself of such remedies, our review is limited to the facts alleged by LeBeouf in her complaint. *See Scanlan v. Tex. A & M University,* 343 F.3d 533, 536 (5th Cir.2003) (noting that we cannot look outside the pleadings when deciding a Rule 12(b)(6) motion). Nothing in LeBeouf's complaint makes it facially apparent that she did not exhaust her administrative remedies. As a result, we must reject Manning's argument that LeBeouf fails to state a procedural due process claim by not first exhausting her state procedural remedies. *See Jones,* 549 U.S. at 216, 127 S.Ct. 910. Of course, on remand, Manning will have the opportunity—outside of a Rule 12(b)(6) motion—to assert his affirmative defense that LeBeouf's claim fails because she did not exhaust her post-deprivation administrative remedies.

### C.

Finally, LeBeouf's claim is not barred by the *Parratt/Hudson* doctrine, which provides that a "random, unauthorized" deprivation of property does not result in a procedural due process violation when the state provides an adequate post-deprivation proceeding.[4] *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As an initial matter, this doctrine is most frequently applied when prisoners (or others) are deprived of their personal property but have the opportunity to seek return of their property (or be made whole) through a post-deprivation process. *See, e.g., Parratt,* 451 U.S. at 541, 101 S.Ct. 1908 (involving a prisoner's § 1983 claim for alleged deprivation of personal property by a state employee's "random and unauthorized act"); *Stotter v. Univ. of Tex. at San Antonio,* 508 F.3d 812, 821–22 (5th Cir.2007) (involving an alleged procedural due process violation when employer discarded terminated employee's personal property without giving him sufficient opportunity to retrieve it). Here, however, LeBeouf does not allege that she was deprived of personal property that could otherwise be restored to her through post-deprivation proceedings, but rather she alleges that she was improperly deprived of her property interest in her employment

---

**3.** Manning has not cited any precedent to support his argument that exhaustion is not an affirmative defense that he carries the burden of establishing, but rather a fact LeBeouf must assert to overcome his assertion of qualified immunity. Indeed, such a position is contrary to many of our holdings in the context of prisoner litigation where we have addressed exhaustion separately as an affirmative defense and not as a fact a plaintiff must allege to overcome a defendant's assertion of qualified immunity. *See, e.g., Johnson v. Johnson,* 385 F.3d 503, 512 (5th Cir.2004); *see also Burling v. Simon,* 406 Fed.Appx. 855, 856 (5th Cir.2010) (unpublished); *Hicks v. Lingle,* 370 Fed.Appx. 497, 498–99 (5th Cir. 2010) (unpublished); *Orange v. Ellis,* 348

Fed.Appx. 69, 71–72 (5th Cir.2009) (unpublished).

**4.** According to Manning, LeBeouf would be entitled to post-termination relief that includes, *inter alia,* an appeal to the Civil Service Commission and, eventually, to Louisiana courts. *See* LA. CONST. art. 10, §§ 8, 12; *see also AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hosps.,* 789 So.2d 1263, 1270 (La.2001) ("[A] classified employee who has been subjected to disciplinary action has a right of appeal to the Civil Service Commission where the appointing authority has the burden of proving cause for the employee's disciplinary action.").

and the salary and benefits associated with the position.

Moreover, a § 1983 action for deprivation of procedural due process is barred under the *Parratt/Hudson* doctrine only if, *inter alia,* the deprivation was unpredictable or unforeseeable and pre-deprivation process would have been impossible or impotent to counter the state actor's particular conduct. *Caine v. Hardy,* 943 F.2d 1406, 1413 (5th Cir.1991) (en banc). Here, unlike in *Parratt* where it was impossible to predict when a prison official's negligence may result in an inmate being deprived of his property, it was predictable that LeBeouf would be deprived of her property interest when Manning informed her that if she would not submit to the psychiatric hospitalization she must resign or be terminated. *See Parratt,* 451 U.S. at 541, 101 S.Ct. 1908. Moreover, it was possible for LeBeouf to have received pre-deprivation process. Indeed, Louisiana civil service law mandates that an employee in LeBeouf's position receive a pre-termination hearing, and Manning had no evidence that LeBeouf was impaired or an immediate threat to herself or others. *See Zinermon v. Burch,* 494 U.S. 113, 137, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (holding that pre-deprivation process cannot be said to be impossible when the state had an established procedure to provide such process in the particular circumstance); *see also Lange,* 56 So.3d at 930 (observing that Louisiana Civil Service Rule 12.7 provides an employee threatened with termination a pre-deprivation right to notice and opportunity to be heard). Accordingly, the *Parratt/Hudson* doctrine does not apply to LeBeouf's claim.

### III.

Having concluded that LeBeouf set forth a plausible § 1983 claim for deprivation of due process, we REVERSE the district court's dismissal of her claim and REMAND for further proceedings.[5]

Judge GRAVES concurs in the judgment only.

---

5. Having concluded that LeBeouf failed to state a claim for relief, the district court did not reach Manning's alternative argument that he is entitled to qualified immunity. We will not address this argument, but rather leave it to the district court to consider in the first instance. *See, e.g., Todd v. Hawk,* 72 F.3d 443, 446–47 (5th Cir.1995) (remanding for consideration of qualified immunity defense after reversing the district court's dismissal under Rule 12(b)(6)).