## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30135

United States Court of Appeals
Fifth Circuit

**FILED**
January 3, 2019

Lyle W. Cayce
Clerk

TERRY ALLEN PARKS,

      Plaintiff - Appellant

v.

TERREBONNE PARISH CONSOLIDATED GOVERNMENT,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-15466

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:*

In October 2015, Plaintiff-Appellant Terry Parks tested positive for THC, the active chemical in cannabis or marijuana, and subsequently retired from the Terrebonne Parish Consolidated Government (the "Parish"). The circumstances surrounding Parks's positive drug test and retirement form the basis of this case. Parks asserts that the Parish constructively discharged him as he was placed between the "Scylla of voluntary resignation and the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30135

Charybdis of forced termination." *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986).

For the reasons stated below, we AFFIRM the district court's grant of summary judgment for the Parish on Parks's remaining Section 1983 claim based on an alleged violation of his due process rights under the 14th Amendment, as well as his state law constitutional due process claim.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Parks worked 33 years for the Parish and was a tenured and permanent employee who could only be fired for cause. Throughout his tenure with the Parish, Parks worked in "safety-sensitive" roles, ultimately retiring as an Instrumentation Technician. Accordingly, he was subject to random drug testing pursuant to Parish Policy. Section 13, Subsection G-2 of the Parish Personnel Manual states that "[t]he confirmed presence of a controlled, dangerous substance in a urine sample of an employee/prospective employee shall result in termination of said individual."

On October 12, 2015, Parks was randomly assigned to take a drug test and reported to Multi-Management Services, Inc. ("MMSI") for administration of the test. Parks tested positive for THC. However, Parks alleges that his test was not handled properly, and thus, it is defective and cannot present cause for his termination. Parks testified that his test was defective because the vial containing the specimen did not have a seal where he could initial. The vials were sealed at some disputed time, but it is undisputed that Parks never initialed the seals.[1]

---

[1] Parks's failure to initial the seals on the vials and sample collector Kevin Lecompte's failure to report the lack of Parks's initials on the vials allegedly violates DOT testing procedures. *See* 49 C.F.R. § 40.71(b)(7) (2001).

No. 18-30135

Parks also testified that there were procedural defects with his test because Brittany Comeaux, an MRO assistant, spoke with him about his test rather than Dr. Brian Heinen, the Medical Review Officer ("MRO"). *See* 49 C.F.R. § 40.131 (a)-(b) (2008) (stating that the MRO must "actually talk to the employee" regarding the outcome of the test, but if the employee declines to speak with the MRO, then staff under the MRO's personal supervision can record that information before the MRO certifies the test).

After Parks was notified about his positive test results, he spoke with J. Dana Ortego the Parish's Human Resources Director; Michael Ordogne, his supervisor; and Al Levron, the Parish Manager. During Parks's individual conversations with Ortego, Ordogne, and Levron, Ortego allegedly advised Parks that "it would be in [Parks's] best interest to retire," and Levron allegedly told Parks that if he did not quit, he was going to be fired. Based on these alleged statements, Parks claims that he was constructively discharged.

Parks's retirement allowed him to retain his healthcare benefits as well as other retirement benefits that he accrued pursuant to the State Parochial Employee's Retirement system, referred to as the "DROP" Program. Parks has not sought to reapply to the Parish since he retired—which he is able to do one year from the date of termination under Section 13, Subsection G-6 of the Parish Personnel Manual—and he has not filed a grievance or sought a hearing before the Personnel Board.

In October 2016, Parks sued the Parish; MMSI; Alere Toxicology Services, Inc. ("Alere"), the organization responsible for testing his urine sample; and Dr. Brian Heinen, as a professional medical corporation and as the MRO. In December 2016, Parks amended his complaint, alleging a Section 1983 claim because his drug test was unreasonable under the Fourth Amendment, given that MMSI, Alere, and Dr. Heinen made procedural errors in administering his drug test and relaying to him the results. *See* U.S. CONST.

3

amend. IV. Parks also alleged a separate Section 1983 claim because the Parish's reliance on the defective drug test led to his constructive discharge without adequate due process, which violated the Fourteenth Amendment. U.S. CONST. amend. XIV. Further, Parks brought various state law claims, including state law constitutional claims against the Parish.

In February 2017, the district court granted MMSI's motion to dismiss and granted in part and denied in part the Parish's motion to dismiss. The district court dismissed Parks's Section 1983 claim based on the Fourth Amendment against the Parish. It also denied the Parish's motion as to Parks's Section 1983 claim based on the Fourteenth Amendment, Parks's state law constitutional claims, and the Parish's alternative motion for summary judgment. In March 2017, the district court granted Alere's motion for judgment on the pleadings and dismissed Parks's claims against Dr. Heinen (as a professional corporation and as the MRO) without prejudice for failure to prosecute. In December 2017, the Parish filed a second motion for summary judgment, and in January 2018, the district court granted the motion resolving Parks's remaining claims against the Parish. Parks timely appealed.

## II.  ANALYSIS

"We review the grant of summary judgment de novo, applying the same standards as the district court." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144,

158-159 (1970)). Not every factual dispute between the parties will prevent summary judgment; rather, the disputed facts must be material and must have the potential under the substantive law governing the issue to affect the outcome of the suit. *See Anderson*, 477 U.S. at 247-48. A plaintiff's mere beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted).

To establish a Section 1983 claim based on termination of employment without affording procedural due process, Parks must first establish that he has a property interest that entitles him to adequate due process before his property interest is deprived. *See McDonald v. City of Corinth*, 102 F.3d 152, 155-56 (5th Cir. 1996)); *see also LeBeouf v. Manning*, 575 F. App'x 374, 376 (5th Cir. 2014) (per curiam) (unpublished) (citing *McDonald*, 102 F.3d at 155-56).[2] Parks's property interest in his continued employment with the Parish is undisputed. Secondly, Parks must establish that he was terminated without receiving adequate due process. *McDonald*, 102 F.3d at 155-56.

For a party with a property interest in continued employment, notice and the opportunity to respond are the essential requirements for pre-termination due process. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." (internal citations

---

[2] *Monell v. Department of Social Services* is also applicable to this case because Parks brings a claim against a municipality. 436 U.S. 658 (1978). However, because we hold that the district court was correct in granting summary judgment to the Parish, there is no *Monell* liability for the Parish.

omitted)). However, this notice and opportunity to respond must be coupled with adequate post-termination administrative procedures. *Id.*

The crux of this case is whether Parks was terminated via constructive discharge without receiving requisite due process. "Constructive discharge in a procedural due process case constitutes a [Section] 1983 claim only if it amounts to forced discharge to avoid affording pre[-]termination hearing procedures." *Fowler*, 799 F.2d at 981; *see also Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005) (per curiam) (citing *Fowler*, 799 F.2d at 981).

Parks does not provide any evidence that the Parish was motivated by a desire to avoid pre-termination proceedings when Parks was offered the opportunity to retire instead of being terminated. Instead, Parks asserts that *Brown v. Texas A&M University* presents an alternative option for him to establish a constructive discharge claim within the context of Section 1983. 804 F.2d 327, 333 (5th Cir. 1986). Interpreting *Fowler*, the Fifth Circuit's opinion in *Brown* states that "in order to establish a cognizable claim of constructive discharge, a plaintiff must allege particular facts showing *either* that the employee found [them]self 'between the Scylla of voluntary resignation and the Charybdis of forced termination,' *or* that [the employer was motivated to evade pre-termination hearing procedures]." *Id.* at 333 (citing *Fowler*, 799 F.2d at 981) (emphasis added); *see also LeBeouf*, 575 F. App'x at 376 n.1 (noting the conflict between *Fowler* and *Brown* without fully addressing it).

The Fifth Circuit rule of orderliness requires us to follow the earliest precedential opinion when there is a conflict between two cases concerning the same issue. *Rios v. City of Del Rio,* 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit (absent an intervening holding to the contrary by the Supreme Court or this court en banc)."). *Fowler* is clear that a constructive discharge claim in a due

process case only constitutes a Section 1983 claim if the employer seeks to avoid affording an employee pre-termination due process. *Brown* misinterprets *Fowler* and created an incorrect standard.

There has been no intervening Supreme Court or Fifth Circuit en banc case regarding the establishment of a Section 1983 claim in a procedural due process case based on a constructive discharge theory. Therefore, *Fowler* is the binding law of the circuit.

Parks's lack of evidence regarding any motivation on behalf of the Parish to avoid pre-termination proceedings necessarily means that Parks fails to provide a required element of his Section 1983 claim, and thus summary judgment was properly granted for the Parish.  *See Celotex Corp.*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and thus, the moving party is entitled to a judgment as a matter of law).

Alternatively, assuming Parks only had to establish that he was placed in a position where he was forced to choose between termination and retirement, the Parish should still receive summary judgment because Parks received adequate due process.[3]

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)). Pre-termination proceedings do not need to be elaborate; the "[Supreme Court] ha[s] pointed out that 'the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" *Loudermill*, 470 U.S. at 544 (quoting *Boddie v.*

---

[3] "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *United States v. Potts*, 644 F.3d 233, 237 n.3 (5th Cir. 2011) (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991)), *cert denied.* 566 U.S. 923 (2012).

*Connecticut*, 401 U.S. 371, 378 (1971)). Additionally, pre-termination hearings "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46 (citing *Bell v. Burson*, 402 U.S. 535, 540 (1971)).

It is undisputed that Parks had notice of his positive test results and impending termination; therefore, we must determine whether Parks had an opportunity to be heard. Parks asserts that because the Parish Policy regarding a positive drug test calls for an automatic termination, it does not provide an opportunity to consider the "appropriateness or necessity of the discharge." *See Loudermill*, 470 U.S. at 543. However, Parks was presented with several opportunities to be heard prior to his retirement regarding an appropriate course of action.

After Parks was notified of his positive test results, he spoke with Ordogne, Levron, and Ortego regarding how the test result would affect his employment. Parks asserts that he was told to retire rather than be terminated, placing him between the "Scylla of voluntary resignation and the Charybdis of forced termination." But, he had notice of his impending termination, he knew the evidence against him, and he had the opportunity to be heard regarding his impending termination by speaking with Ordogne, Levron, and Ortego. *See Loudermill*, 470 U.S. at 546. Therefore, we hold that the Parish offered him constitutionally adequate pre-termination due process. *See, e.g., Browning v. City of Odessa*, 990 F.2d 842, 844-45 (5th Cir. 1993) (determining that Plaintiff's thirty-minute meeting with his superior constituted an adequate pre-termination hearing "since a full evidentiary post-termination hearing was available").

As to post-termination due process, Parks never attempted to implement the grievance procedure set out in Section 8.2 of the Parish Personnel Manual.

Under this section, Parks could have appealed to the Personnel Board for a hearing regarding any disciplinary action taken against him. Parks testified that he was not sure that he could have gone through the grievance process as a "non-employee." However, he also testified that he had gone through the grievance process before regarding a separate non-disciplinary matter, which establishes that he was familiar with the grievance process. Further, Parks testified that "[he] probably had a grievance process," but that he did not have the necessary evidence to rebut the doctor's test and he would have to do it while already terminated.

Taking the facts in Parks's favor, Parks had knowledge of the grievance procedure, but he did not take advantage of this opportunity post-termination. Whether Parks believed that a post-termination hearing would be futile does not establish that the Parish lacked adequate post-termination opportunities for Parks to be heard, and it does not establish a lack of post-termination due process. *See Browning*, 990 F.2d at 845 n.7 ("This [c]ourt has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process." (citations omitted)); *see also Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987) (same). In a post-termination hearing Parks could have argued that the test was improper, that there were other alleged procedural defects, and any other arguments surrounding his termination. For these reasons, we hold that the Parish provided Parks with an adequate opportunity for post-termination due process.[4]

---

[4] We do not address the Parish's argument that Parks waived his right to post-termination due process because he retired. Regardless of whether Parks waived his right to post-termination due process, the outcome would still be the same because we hold that the Parish offered Parks an adequate opportunity for post-termination due process. Additionally, we do not address this argument because the panel is also able to resolve this case on other grounds.

No. 18-30135

## III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment for the Parish on Parks's remaining Section 1983 claim and state law constitutional claim. [5]

---

[5] Parks's state law constitutional claim pursuant to La. Const. Art. I § 2 fails for the same reasons as Parks's Section 1983 claim. *See Plaquemines Par. Gov't v. River/Rd. Const., Inc.*, 828 So. 2d 16, 24 (La. Ct. App. 2002) ("Unlike the Louisiana Constitution's provision on equal protection, which is distinct from that provided in the Fourteenth Amendment, its guarantee of due process does not vary semantically from the Due Process Clause of the Fourteenth Amendment. Consequently, federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2's due process protection." (citing *Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La. 1998))), *writ denied*, 829 So. 2d 1055 (La. 2002).